IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUAN ANTONIO GUAJARDO LOPEZ,
      Plaintiff,

v.

                                                      No. 1:22-cv-00036 JCH/SCY

HARPREET SINGH AND
EXCALIBUR TRUCKING, LLC,
      Defendants.

**MEMORANDUM OPINION AND ORDER**

      This case is before the Court on *Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claims* (ECF No. 85). Plaintiff, Juan Antonio Guajardo Lopez, filed his response (ECF No. 87) and Defendant, Excalibur Trucking, LLC ("Excalibur") replied (ECF No. 91). Defendant asks for partial summary judgment on Plaintiff's punitive damages claims, contending that Plaintiff has failed to provide sufficient evidence establishing the requisite mental state to justify an award of punitive damages. Because the Court concludes that there is sufficient evidence demonstrating a genuine issue of material fact regarding Defendant's mental state, Defendant's motion will be denied.

**I.     BACKGROUND**

      Defendant Excalibur is a California-based and Department of Transportation ("DOT")-authorized motor carrier owned and operated solely by Arun Sukesan. Pl.'s Resp. 4, ECF No. 87. As a motor carrier, Excalibur is governed by the Federal Motor Carrier Safety Administration and Federal Motor Carrier Safety Regulations ("FMCSR"). *See* 49 C.F.R. §§ 390.3T(a)(1), 390.5T (definition of "Motor Carrier"). Among other things, the FMCSR mandates that motor carriers retain all drivers' records of duty status, imposes limits on the number of consecutive hours that

drivers can drive, and requires a separate endorsement for drivers and placards for vehicles hauling hazardous materials. *See id.* §§ 395.8, 395.3, 383.93.

Excalibur hired Harpreet Singh[1] as a driver in late 2020. *See* Sukesan Dep. 20:1-8, Pl.'s Ex. B, ECF No. 87. After Excalibur hired Mr. Singh, it became aware that Mr. Singh had a violation on his Drug and Alcohol Clearinghouse ("Clearinghouse")[2] record for refusing a drug test scheduled by a different potential employer on January 4, 2021. *See* Sukesan Dep. 31:4-17, Def.'s Ex. B, ECF No. 91. Mr. Singh stopped driving for Excalibur at this point. *See* Sukesan Dep. 37:2-6, Pl.'s Ex. B, ECF No. 87. When Mr. Sukesan asked Mr. Singh why he had refused the drug test, Mr. Singh explained that he had applied for jobs with several companies in 2020 and one of those companies scheduled him for a pre-employment drug test, as required by 49 C.F.R. § 382.301. Sukesan Dep. 31:4-17, Def.'s Ex. B, ECF No. 91. Mr. Sukesan testified that Mr. Singh told him that although Mr. Singh ultimately decided not to pursue employment with this company, the company did not cancel the pre-employment drug test they had scheduled for him. *Id.* When Mr. Singh did not present for the drug test, his absence was reported on his record as a refusal. *Id.*

According to the FMCSR, a refusal to submit to a drug or alcohol test is generally equivalent to failing a drug or alcohol test. *See* 49 C.F.R. §§ 382.107 (definition of "Refuse to submit (to an alcohol or controlled substances test)"), 40.191. For a driver to resume driving after a failed drug test or a refusal, the driver must complete the return-to-duty process. *See id.*

---

[1] Mr. Singh is not currently a party to this lawsuit as Plaintiff has not been able to locate Mr. Singh to serve him. All claims against Mr. Singh have been dismissed without prejudice. *See* Order Adopting Proposed Findings and Recommended Disposition, ECF No. 52.

[2] The Drug and Alcohol Clearinghouse is an online database that gives employers and other agencies access to Commercial Driver's License ("CDL") holders' drug and alcohol violations. *See What Is the Drug and Alcohol Clearinghouse (Clearinghouse) and What Information Does it Contain?*, FMCSA (July 22, 2019), https://www.fmcsa.dot.gov/regulations/drug-alcohol-testing/what-drug-and-alcohol-clearinghouse-clearinghouse-and-what [https://perma.cc/3WD5-KVQ8].

§§ 382.309, 40.305. Because Mr. Singh had the January 4, 2021, refusal on his record, he was required to complete the return-to-duty process with a DOT-qualified Substance Abuse Professional ("SAP") before he was permitted to drive a Commercial Motor Vehicle ("CMV") with Excalibur. According to Mr. Singh's Clearinghouse record, he was determined eligible for return-to-duty drug testing on January 25, 2021, and his negative drug test was received on February 19, 2021. Pl.'s Resp. Ex. C, ECF No. 87; Sukesan Dep. 37:7-38:2. Additionally, Mr. Sukesan contacted Mr. Singh's SAP to verify that he had completed the recommended substance abuse counseling, received a negative drug test, and was once again permitted to drive for Excalibur. Sukesan Dep. 35:13-25, Def.'s Ex. B, ECF No. 91.

Although he was cleared to drive, Mr. Singh's return-to-duty process mandated follow-up evaluations by an SAP and random drug tests over the following several months. Pl.'s Resp. 6, ECF No. 87. During one of these follow-up drug tests conducted on August 19, 2021, while Mr. Singh was employed by and driving for Excalibur, he tested positive for amphetamine and methamphetamine. *Id.*; Pl.'s Resp. Ex. D, ECF No. 87 After learning about the positive test result, Mr. Sukesan informed Mr. Singh that he was not allowed to operate a CMV for Excalibur until he completed a new return-to-duty process by passing a drug test, completing a treatment plan, and obtaining a letter from an SAP. *See* Def.'s Mot. Summ. J. 2, ECF No. 85. Mr. Singh completed the new return-to-duty process in October 2021, at which point Excalibur permitted him to resume driving. *Id.*

On November 21, 2021, Mr. Singh was transporting hazardous materials in a 2014 Freightliner owned by Excalibur, traveling westbound on Interstate 40 in Grants, New Mexico. Compl. 2. He was traveling about 75 mph in the right-hand lane. *Id.*; Pl.'s Resp. Ex. F, ECF No. 87. According to Mr. Singh's Dash Cam footage, his truck was quickly approaching a line of traffic

that had slowed in front of him. Plaintiff's vehicle was at the back of that line of traffic. Pl.'s Resp. Ex. F, ECF No. 87. Mr. Singh failed to slow the truck despite the upcoming traffic. *Id.* When Mr. Singh finally approached the traffic, he attempted to avoid rear-ending Plaintiff's car by swerving into the left lane. *Id.* He was unsuccessful, crashing into the back left corner of Plaintiff's car at approximately 74 mph. Compl. 2; Pl.'s Resp. Ex. F, ECF No. 87. His truck continued forward, sideswiping another vehicle in the line of traffic, and ultimately toppling over on the side of the interstate, spilling hazardous cargo. Pl.'s Resp. 9, ECF No. 87. Once the truck settled, Mr. Singh exited the vehicle and fled the scene. *Id.* Plaintiff sustained injuries as a result of the crash. Compl. 2.

When law enforcement subsequently inspected the scene, they noted that Mr. Singh did not have the proper hazmat endorsement on his Commercial Driver's License ("CDL"), or the proper placards displayed on the truck as required by the FMCSR for motor vehicle operators who transport hazardous materials. *See* 49 C.F.R. §§ 383.93, 177.823; Allen[3] Aff. ¶¶12, 25, Pl.'s Resp. Ex. A, ECF No. 87. Law enforcement then informed Mr. Sukesan about the accident via telephone. *See* Sukesan Dep. 56:24, Pl.'s Resp. Ex. B, ECF No. 87. Mr. Sukesan terminated Mr. Singh's employment with Excalibur. *See id.* 78:20-79:12.

## II.     LEGAL STANDARDS

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law."

---

[3] Plaintiff filed as an exhibit the Affidavit of Mr. Roger C. Allen. Mr. Allen is a CMV owner and operator and has over 45 years of experience in the transportation industry. He has operated CMVs, including tractor/trailers in excess of two million miles. Allen Aff. ¶¶ 5-7, Pl.'s Resp. Ex. A, ECF No. 87.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). And a dispute is genuine if the evidence might lead a reasonable jury to return a verdict for the nonmovant. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). The moving party first bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must "come forward with specific facts showing" that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). In this instance, the Court makes all reasonable inferences in favor of the Plaintiff.

"[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018). Accordingly, as this case was brought as a federal diversity action, the Court will apply the substantive law of New Mexico.

### III.   DISCUSSION

Defendant asserts that it is entitled to summary judgment on Plaintiff's claim for punitive damages because (1) it cannot be held vicariously liable for the actions of Mr. Singh because Mr. Singh was an independent contractor and not an Excalibur employee when the collision occurred, and (2) Plaintiff has not presented enough facts so a reasonable jury could find that the Defendant

had the requisite mental state to justify punitive damages. The Court will discuss the law relevant to each argument in turn.

### a. Corporate Liability for Actions of Independent Contractors

Under New Mexico law, "an employer of an independent contractor is not responsible for the negligence of the contractor or his employees." *See Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶10, 827 P.2d 102. There are exceptions to this general rule, however, including when the independent contractor has non-delegable, statutory duties to protect another from harm—like the duties imposed on drivers by the FMCSR. *See Dixon v. Stone Truck Line, Inc.*, No. 2:19-cv-000945, 2021 WL 5493076, at *16 (D.N.M. Nov. 23, 2021). Further, motor carriers are required to "have exclusive possession, control, and use of [their] equipment. . . and shall assume complete responsibility for the operation of the equipment." 49 C.F.R. § 376.12; *Gutierrez v. Uni Trans, LLC*, No. 1:21-cv-00073, 2023 WL 5099694, at *5 (D.N.M. Aug. 9, 2023); *see also Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 39 (Tex. Ct. App. 2002) (noting that motor carriers have both legal right and duty to control leased vehicles operated for their benefit). Because the FMCSR imposes duties on drivers of DOT-authorized motor carriers and the motor carriers carry the ultimate responsibility for the operation of their equipment, a statutory employee relationship is created between a motor carrier and the drivers it employs. *See Gutierrez*, 2023 WL 5099694, at *5; *Dixon*, 2021 WL 5493076, at *16; *Morris*, 78 S.W. 3d at 39. Accordingly, the motor carrier "is vicariously liable as a matter of law under the FMCSR for the negligence of its statutory employee drivers." *Dixon*, 2021 WL 5493076, at *16 (quoting *Morris*, 78 S.W.3d at 39 (citing, among others*, Rodriguez v. Ager*, 705 F.2d 1229, 1233-36 (10th Cir. 1983))).

Further, the FMCSR does not permit motor carriers to classify drivers as independent contractors to escape liability—independent contractors are squarely covered by the definition of

"employee." 49 C.F.R. § 390.5T (defining "employee" to include "an independent contractor while in the course of operating a commercial motor vehicle"). Congress's policy rationale in classifying independent contractors as employees was to prevent interstate motor carriers from "immuniz[ing] themselves from liability for negligent drivers by leasing trucks and nominally classifying the drivers who operated the trucks as 'independent contractors.'" *Morris*, 78 S.W.3d at 37.

### b. Corporate Liability for Punitive Damages

In New Mexico, punitive damages are not "compensation for injury." *Gonzales v. Surgidev Corp.*, 1995-NMSC-047, ¶ 12, 899 P.2d 594. An award of punitive damages requires that the tortfeasor have a culpable mental state because "such damages aim to punish and deter 'culpable conduct beyond that necessary to establish the underlying cause of action.'" *Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 58, 346 P.3d 1136 (quoting *Walta v. Gallegos Law Firm, P.C.*, 2002-NMCA-015, ¶ 56, 40 P.3d 449). In addition to possessing a culpable mental state, the wrongdoer's conduct must "rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 881 P.2d 11. Further, as the dangerousness of conduct increases, the duty of care increases, so that "conduct that amounts to a breach of duty is more likely to demonstrate a culpable mental state." *Id.* at ¶ 13.

Corporations must also possess a culpable mental state to be held liable for the misconduct of their employees. "[P]unitive damages are not imposed on an employer for the acts of an employee as a matter of simple respondeat superior." *Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 39, 258 P.3d 1075. "Rather, there must be proof in some form of the employer's own culpable state of mind and conduct." *Id.* The New Mexico Supreme Court elaborated on what kinds of behaviors might evidence a corporation's culpable mental state, listing three scenarios:

"(1) [C]orporate employees possessing managerial capacity engage in conduct warranting punitive damages; (2) the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages; or (3) under certain circumstances, the cumulative effects of the conduct of corporate employees demonstrate a culpable mental state warranting punitive damages." *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 21, 143 P.3d 717 (citations omitted).

In *Clay v. Ferrellgas, Inc.*, the New Mexico Supreme Court explained how various acts of a corporation should be "viewed cumulatively to determine the mental state of a corporation." 1994-NMSC-080, ¶ 20. There, it found that the combination of several instances of negligence by different employees demonstrated a culpable mental state of the corporation as a whole. *Id.* at ¶ 24. "The culpable mental state of the corporation, however, may be inferred from the very fact that one employee could be ignorant of the acts or omissions of other employees with potentially disastrous consequences." *Id.* at ¶ 20. The Supreme Court recognized the undesirable result that would follow from viewing the employees' conduct in isolation: "The Court of Appeals exonerated Ferrellgas from paying punitive damages because neither [of the two employees] knew what the other was doing. If we follow this analysis, Ferrellgas escapes liability because its employees failed to communicate with each other." *Id.* (citations omitted).

In assessing a corporation's mental state, the jury may consider facts that have not been presented as a theory of liability as evidence of a broader regime of culpability. *Id.* at ¶ 23 n.4; *Grassie*, 2011-NMCA-024, ¶ 45. In *Grassie*, the plaintiff brought a medical negligence claim against a hospital, asking for punitive damages under *Clay*'s cumulative effects theory. 2011-NMCA-024, ¶ 2. The court decided that when assessing the cumulative effects of the hospital's conduct, the jury could consider conduct of various nurses, even though that conduct was ultimately found by the jury not to be the proximate cause of the tort at issue. *Id.* at ¶ 45 ("The jury

is not precluded from considering such background or contextual evidence in its deliberations. Such background or contextual evidence need not be about acts which are a proximate cause of the plaintiff's damages, and the background evidence need not constitute a completed tort."). There, the court found that a reasonable jury could have concluded that the record "paints a scenario of aggravated patient neglect broad enough in its sources to support finding a culpable mental state on the part of the Hospital." *Id.* at ¶ 47.

### c. Analysis

As an initial matter, Excalibur contends that it cannot be vicariously liable for Mr. Singh's actions because at the time of the accident, Mr. Singh was an independent contractor, he was furthering an "external, independent and personal motive," and the accident that occurred was not "done in any manner that serves Excalibur." Def.'s Mot. Summ. J. 10, ECF. No. 85.

This argument fails. As discussed previously, interstate carriers are vicariously liable under the FMCSR for the negligence of their statutory employee drivers, whether or not the drivers are classified as independent contractors. *See Dixon v. Stone Truck Line, Inc.*, No. 2:19-cv-000945, 2021 WL 5493076, at *16 (D.N.M. Nov. 23, 2021). Excalibur's strategy here, to escape vicarious liability by calling Mr. Singh an independent contractor, is the exact scenario Congress was trying to avoid when it decided to include independent contractors within the definition of employee in the FMCSR. *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 37-38 (Tex. Ct. App. 2002). Therefore, Excalibur, a DOT-registered motor carrier governed by the FMCSR, cannot escape liability by asserting that Mr. Singh was an independent contractor, and its argument fails.

Given that Defendant Excalibur can be held vicariously liable for the actions of Mr. Singh, the Court must now assess if Plaintiff has set forth enough evidence to create an issue of fact as to whether Defendant possessed the requisite culpable mental state to support an award of punitive

damages. Defendant argues that summary judgment should be granted because Plaintiff has not provided any facts that establish that Defendant acted with a culpable mental state rising to a malicious, willful, reckless, wanton, fraudulent or bad faith level, or with utter indifference to the consequences. *See Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 881 P.2d 11; *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 24, 880 P.2d 300. In addition to arguing that Mr. Singh was an independent contractor and not under the control of Excalibur at the time of the accident— an argument this Court has already dismissed—Defendant notes that there was no Excalibur representative present at the time of the accident and Excalibur did not learn about the accident until it received a phone call from law enforcement a few hours later. Additionally, Defendant argues that it never sanctioned or ratified Mr. Singh's conduct during the accident, and points to the fact that Excalibur promptly ended its relationship with Mr. Singh after the accident as support of its disapproval.

However, Plaintiff correctly points to the cumulative conduct doctrine from *Clay v. Ferrellgas, Inc.* that can be used to establish corporate liability for punitive damages. 1994-NMSC-080, ¶ 20; *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046 ¶ 21, 143 P.3d 717 ("[U]nder certain circumstances, the cumulative effects of the conduct of corporate employees demonstrate a culpable mental state warranting punitive damages."). Plaintiff puts forth several facts that it contends, cumulatively, establish Defendant's culpable mental state. This Court will address each in turn.

First, Plaintiff argues that Mr. Singh's drug test refusal from January 2021 constitutes an offense that would disqualify a driver from driving a commercial motor vehicle under 49 C.F.R. § 383.51, and therefore, Excalibur was negligent by hiring him in the first place. However,

Section 383.51 requires that a driver be "convicted" of one of the listed offenses to be disqualified from driving. Section 383.5 defines a "conviction" as,

> an unvacated adjudication of guilt, or a determination that a person has violated or failed to comply with the law in a court of original jurisdiction or by an authorized administrative tribunal, an unvacated forfeiture of bail or collateral deposited to secure the person's appearance in court, a plea of guilty or nolo contendere accepted by the court, the payment of a fine or court cost, or violation of a condition of release without bail, regardless of whether or not the penalty is rebated, suspended, or probated. 49 C.F.R. § 383.5.

Here, Plaintiff provides no documentation regarding Mr. Singh's refusal to test beyond the notation on his Clearinghouse record and the affidavit of Mr. Allen. Pl.'s Resp. Ex. C, ECF No. 87; Allen Aff. ¶ 22, Pl.'s Resp. Ex. A. Mr. Allen states that the combination of the drug test refusal and the later positive test should have disqualified Mr. Singh from driving with Excalibur. Allen Aff. ¶ 22. However, Mr. Allen only provides a citation to Section 383.51 and does not identify anything that categorizes this refusal as a conviction under Section 383.51. *Id.* Thus, in the absence of other supporting evidence, Mr. Singh's refusal to test does not qualify as a conviction under 49 C.F.R. § 383.51. *See e.g.*, *Burdine v. Ark. Dept. of Fin. & Admin.*, 2010 Ark. 455, at 8, 379 S.W.3d 476, 481 (holding that administrative tribunal finding that defendant violated or failed to comply with Missouri law was a "conviction" for purposes of 49 C.F.R. § 383.5); *Motor Vehicle Admin. v. Jaigobin*, 991 A.2d 1251, 1257 (Md. App. Ct. 2010) (finding that imposition of probation before judgment and fine constituted "conviction" under 49 C.F.R. § 383.5 and identical state law).

Second, Plaintiff asserts that Excalibur should not have rehired Mr. Singh after his positive drug test in August 2021. While one may question the propriety of Excalibur's decision to rehire Mr. Singh, Excalibur and Mr. Singh complied with the return-to-duty process laid out by the FMCSR for permitting drivers who have failed a drug test to start driving again. *See* 49 C.F.R. § 40.305. Mr. Singh completed a treatment plan designed by an SAP, received a letter from an

SAP determining that he was eligible to drive, and presented a negative drug test. Def.'s Mot. Summ. J. 2, ECF No. 85.

Plaintiff takes issue with Mr. Singh's completion of the treatment plan, noting that Mr. Singh never reported to Excalibur on two YouTube videos the SAP recommended he watch. Def.'s Mot. Summ. J. Ex. D, ECF No. 85; Pl.'s Resp. 6, ECF No. 87. However, this Court agrees with the Defendant that the recommendation is unclear as to who Mr. Singh should have reported to on these videos. Further, this fact is immaterial as the SAP's letter clearly states that "Mr. Singh has successfully complied with SAP recommendations as required by DOT," and that the YouTube video reports are a "recommendation." Def.'s Mot. Summ. J. Ex. D, ECF No. 85. While it may have been prudent for Mr. Sukesan to follow up with Mr. Singh about his work on this recommendation, the fact that Mr. Sukesan was unsure about the status of these reports did not prevent Mr. Singh from being able to return to duty.

Third, Plaintiff asserts that Defendant was negligent in monitoring Mr. Singh's driver logbooks and trip inspections as required by the FMCSR. *See* 49 C.F.R. §§ 395.8, 396.11. Drivers must prepare a record of duty status for each 24-hour period of work they complete and submit that record to the motor carrier within 13 days of the relevant 24-hour period. *Id.* § 395.8(a). The motor carrier must then retain that record for not less than six months from the date of receipt. *Id.* § 395.8(k). In addition, drivers must prepare written reports after each workday on the condition of the vehicle they were operating and retain these reports for three months from the date the report was prepared. *Id.* § 396.11.

Excalibur did not retain Mr. Singh's records at any point during his employment. Sukesan Dep. 64:9-21, Pl.'s Resp. Ex. B, ECF No. 87. Mr. Sukesan asked Mr. Singh to submit his records at the start of his employment with Excalibur, but Mr. Singh refused, asserting that he was not

required to provide records because he was an independent contractor. *Id.* As previously discussed, Mr. Singh and Excalibur were not exempt from the FMCSR by classifying Mr. Singh as an independent contractor. Mr. Singh was required to provide Excalibur with a record of duty status for each 24-hour period he drove, and his trip inspections completed after each workday, and Excalibur was required to retain those records for six months and three months, respectively, after their receipt.

Finally, Plaintiff points to the fact that on the date of the accident, Mr. Singh was transporting hazardous materials, specifically, sulfuric acid and sodium chlorate, but did not have the proper hazardous materials endorsement on his CDL or proper placards on the vehicle, as required by the FMCSR. *See* Pl.'s Resp. Ex. E, at 6, ECF No. 87; 49 C.F.R. §§ 383.93, 397.1(a), 177.823. Law enforcement made this determination during the inspection of Mr. Singh's vehicle after the collision and noted it in the New Mexico Police Crash Report. Allen Aff. ¶ 25, Pl.'s Resp. Ex. A, ECF No. 87. Without the proper endorsement or placards, Mr. Singh did not have the authority to transport hazardous chemicals on the date of the accident. Yet, Defendant employed him to do so.

Having considered the above allegations and inferences in a light most favorable to the nonmoving party, the Court finds that Plaintiff has presented enough facts showing that a genuine issue remains for trial. *See Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). A jury could find that the cumulative effects of Excalibur's negligence—failing to monitor Mr. Singh's logbooks or trip inspections records and permitting him to drive a truck loaded with hazardous cargo without the appropriate hazardous materials endorsement on his CDL or placards on the vehicle, all while being aware of Mr. Singh's recent history with drugs—evince Defendant's culpable mental state that rises to a willful, wanton,

malicious, reckless, or bad faith level. *See Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 881 P.2d 11. A jury could find that these facts prove that Defendant "displayed a cavalier attitude toward[] safety regulations," when engaging in a dangerous activity, that is, the operation of a trucking company that transports hazardous materials. *Id.* at ¶ 23 (omission in original). A reasonable jury could conclude that under the circumstances, Mr. Sukesan was reckless in failing to monitor Mr. Singh's logbooks and trip inspections to ensure that he was not overworking and that the truck was in good condition. Further, Mr. Sukesan should not have permitted Mr. Singh to transport hazardous materials on the date of the accident given that he did not have the proper endorsement on his CDL or placards on his truck. The Plaintiff has presented enough evidence for a jury to conclude that Mr. Sukesan failed to exercise this bare-minimum level of supervision all while knowing that Mr. Singh had tested positive for methamphetamine and amphetamines almost exactly three months prior. A reasonable jury could find that this lack of oversight amounts to a culpable mental state rising to a reckless or bad faith level.

Defendant argues that summary judgment should be granted because none of the above-mentioned facts can be shown to have caused the accident. Because Mr. Singh fled, the record does not contain evidence of specific facts—such as drugs or driver fatigue—explaining why Mr. Singh failed to stop the truck before it collided with Plaintiff's vehicle. However, as noted in *Clay* and *Grassie*, the fact that certain evidence has not been presented as a theory of liability does not preclude the jury from considering it in its assessment of the corporation's mental state. *Id.* at ¶ 23 n.4; *Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 45, 258 P.3d 1075. Thus, just because Plaintiff cannot establish that it was fatigue or Mr. Singh's inexperience transporting hazardous materials that caused the accident does not mean that the jury could not consider these facts when assessing Defendant's culpable mental state.

IV. **CONCLUSION**

Because there is a genuine issue of material fact as to whether the Defendant possessed the requisite mental state to have punitive damages assessed against it, the Court concludes the motion for partial summary judgment should be denied.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claims* (ECF No. 85) is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE